UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

STEPHANIE HANSON,

    Plaintiff,
v.

AMERICAN AIRLINES, INC.; and
ENVOY AIR INC. d/b/a American Eagle,

    Defendants.
_____/

**COMPLAINT**

Plaintiff, Stephanie Hanson, sues American Airlines, Inc. and Envoy Air Inc. d/b/a American Eagle and in support thereof, states as follows:

**PARTIES, JURSIDICTION, VENUE,
AND GENERAL ALLEGATIONS RELEVANT TO ALL COUNTS**

1. This is an action for damages in excess of seventy-five thousand dollars arising out of injuries sustained by Ms. Hanson while traveling as a passenger aboard an international American Airlines/American Eagle/Envoy Air flight to The Bahamas.

2. At all times material, Ms. Hanson was and is a United States citizen, domiciled in Florida.

3. At all times material, American Airlines, Inc. ("AA") was and is a Delaware corporation with its headquarters and principal address located at 1 Skyview Drive MD8B503, Fort Worth, Texas. AA's registered agent in Florida is CT Corporation System, located at 1200 S. Pine Island Road, Plantation, Florida 33324.

1

4. At all times material, Envoy Air Inc. ("Envoy") was and is a Delaware corporation with its headquarters and principal address located at 4301 Regent Blvd. MD 243, Irving, Texas, 75063. Envoy is a subsidiary of American Airlines Group, the parent corporation for AA.

5. Jurisdiction is proper in United States District Courts pursuant to 28 U.S.C. §1331 in that this is a civil action which arises under the law and treaties of the United States, namely the *Convention for the Unification of Certain Rules Relating to International Transportation by Air,* concluded at Montreal, Canada, May 28, 1999 ("Montreal Convention"). (*See* Exhibit 1: Montreal Convention Full Text).

6. In the alternative, jurisdiction is proper in United States District Courts pursuant to 28 U.S.C. 1331 in that this is a civil action which arises under the law and treaties of the United States, namely the *Convention for the Unification of Certain Rules for International Carriage by Air* concluded at Warsaw, Poland, October 12, 1929 ("Warsaw Convention") as amended by the *Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air*, done at the Hague on October 25, 1955 ("Hague Protocol"). (*See* Exhibit 2: Warsaw Convention and Hague Protocol Full Text).

7. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

8. Defendants conduct extensive and not isolated business in Miami, Florida through the operation of their airline. Among other business activities, Defendants conduct hundreds if not thousands of daily flights in and out of Miami International Airport. Defendants further maintain offices and employees in Miami, Florida. Defendants use Miami as a major hub and cornerstone for the American Airlines network.

9. AA is the holder of a Federal Aviation Administration issued Air Carrier Certificate under 14 C.F.R. § 121 and is engaged in both domestic and international scheduled transportation of passengers.

10. Envoy is the holder of a Federal Aviation Administration issued Air Carrier Certificate under 14 C.F.R. § 121 and is engaged in both domestic and international scheduled transportation of passengers.

11. On October 24, 2020, Ms. Hanson was a fare paying passenger pursuant to contract of carriage on American Airlines Flight No. 4194 on a flight departing from Miami, Florida bound for Freeport, Bahamas ("the subject flight").

12. At all times material Defendants together or individually owned, operated and/or were the entities in control of the subject flight.

13. At all times material AA and/or Envoy were in control of their agents including all personnel present on the subject flight.

14. On October 24, 2020, Ms. Hanson was buckled in her assigned seat when upon landing in Freeport, the subject flight experienced an accident as contemplated by the Montreal and Warsaw Conventions. The accident was caused by landing gear failure or pilot error by veering off the runway during landing. As a result, Ms. Hanson suffered personal injuries to her ankle, neck and back.

## COUNT I
## AGAINST AMERICAN AIRLINES, INC.
## UNDER ARTICLE 17 MONTREAL CONVENTION

15. At the time of the incident described above there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air

known as the Montreal Convention. Both the United States and The Bahamas are state parties to the Montreal Convention.

16. At the time of the incident and subsequent injuries, Ms. Hanson was engaged in international carriage as defined in Article 1(2) of the Montreal Convention and the same is applicable to this action pursuant to Article 1(1) of the Montreal Convention.

17. Pursuant to Article 17.1 of the Montreal Convention, the carrier is strictly liable for all damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking. In the instant case, Ms. Hanson was aboard the aircraft.

18. The Montreal Convention further provides that for a passenger's damages up to 128,821 Special Drawing Rights ("SDR")[1], the carrier cannot exclude or limit its liability. Montreal Conv., Art. 21.1. (*See* Exhibit 3: Revised Limits of Liability Under the Montreal Convention).

19. In order to limit its liability for damages exceeding 128,821 SDR, the carrier has the burden of proof to show that: 1) the damages were not due to its negligence, wrongful act or omission, or the negligence, wrongful act or omission of its servants and agents, or, 2) such damage was solely due to the negligence or other wrongful act of omission of a third party. Montreal Conv., Art.21.2.

20. The landing gear failure and Ms. Hanson's subsequent injuries were an unexpected and unusual occurrence and constitutes an accident under Article 17 of the Montreal Convention. As a result, Ms. Hanson suffered bodily injuries.

21. AA is strictly liable for Plaintiff's damages up to 128,821 SDR and the carrier "shall not be able to exclude or limit its liability." Montreal Conv., Art. 21.1.

---

[1] An SDR is a unique monetary unit that acts in the capacity of a reserve instrument. It is promulgated and controlled by the International Monetary Fund and composed of a basket of currencies. At the time of filing of this complaint, 1 SDR = 1.38 U.S. Dollars.

22. AA is also strictly liable for Plaintiff's full, fair and just damages, without the monetary limitation in Article 21.1., as AA is unable to prove that Plaintiff's damages were not: 1) due to its own (or its agents and servants) negligence, wrongful act or omission, or 2) solely due to the negligence or other wrongful act of omission of a third party. Montreal Conv., Art. 21.2 (placing burden of proof on the carrier).

23. Ms. Hanson incurred serious bodily injuries, including aggravation of a previous ankle injury, orthopedic neck and back injuries, physical pain and suffering, anguish, fright and shock, annoyance, discomfort, loss of the enjoyment of life in the past and in the future.

WHEREFORE, Plaintiff, Stephanie Hanson, demands judgment against American Airlines, Inc. for compensatory damages and any and all damages to which she is entitled under applicable law.

## COUNT II
## AGAINST ENVOY AIR INC.
## UNDER ARTICLE 17 MONTREAL CONVENTION

24. At the time of the incident described above there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the Montreal Convention. Both the United States and The Bahamas are state parties to the Montreal Convention.

25. At the time of the incident and subsequent injuries, Ms. Hanson was engaged in international carriage as defined in Article 1(2) of the Montreal Convention and the same is applicable to this action pursuant to Article 1(1) of the Montreal Convention.

26. Pursuant to Article 17.1 of the Montreal Convention, the carrier is strictly liable for all damage sustained in case of death or bodily injury of a passenger upon condition only that the

accident which caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking. In the instant case, Ms. Hanson was aboard the aircraft.

27. The Montreal Convention further provides that for a passenger's damages up to 128,821 SDR, the carrier cannot exclude or limit its liability. Montreal Conv., Art. 21.1. (*See* Exhibit 3: Revised Limits of Liability Under the Montreal Convention).

28. In order to limit its liability for damages exceeding 128,821 SDR, the carrier has the burden of proof to show that: 1) the damages were not due to its negligence, wrongful act or omission, or the negligence, wrongful act or omission of its servants and agents, or, 2) such damage was solely due to the negligence or other wrongful act of omission of a third party. Montreal Conv., Art.21.2.

29. The landing gear failure and Ms. Hanson's subsequent injuries were an unexpected and unusual occurrence and constitutes an accident under Article 17 of the Montreal Convention. As a result, Ms. Hanson suffered bodily injuries.

30. Envoy is strictly liable for Plaintiff's damages up to 128,821 SDR and the carrier "shall not be able to exclude or limit its liability." Montreal Conv., Art. 21.1.

31. Envoy is also strictly liable for Plaintiff's full, fair and just damages, without the monetary limitation in Article 21.1., as AA is unable to prove that Plaintiff's damages were not: 1) due to its own (or its agents and servants) negligence, wrongful act or omission, or 2) solely due to the negligence or other wrongful act of omission of a third party. Montreal Conv., Art. 21.2 (placing burden of proof on the carrier).

32. Ms. Hanson incurred serious bodily injuries, including aggravation of a previous ankle injury, orthopedic neck and back injuries, physical pain and suffering, anguish, fright and shock, annoyance, discomfort, loss of the enjoyment of life in the past and in the future.

WHEREFORE, Plaintiff, Stephanie Hanson, demands judgment against Envoy Air Inc. for compensatory damages and any and all damages to which she is entitled under applicable law.

### COUNT III
### AGAINST AMERICAN AIRLINES, INC.
### UNDER ARTICLE 17 WARSAW CONVENTION

33. In the alternative, at the time of the incident described above there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the Warsaw Convention. Both the United States and The Bahamas are state parties to the Warsaw Convention.

34. At the time of the incident and subsequent injuries, Ms. Hanson was engaged in international carriage as defined in Article 1(2) of the Warsaw Convention and the same is applicable to this action pursuant to Article 1(1) of the Warsaw Convention.

35. Pursuant to Article 17 of the Warsaw Convention, the carrier is strictly liable for damage sustained in case of death or wounding of a passenger upon condition only that the accident which caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking. In the instant case, Ms. Hanson was aboard the aircraft.

36. The Warsaw Convention and AA ticket contract further provide that for a passenger's damages up to $75,000.00 the carrier cannot exclude or limit its liability. Warsaw Conv., Art. 22(1). (*See* Exhibit 4: AA Contract of Carriage)[2]

37. In addition, pursuant to Article 25 of the Warsaw Convention, the Defendants are liable to Plaintiff for all personal injuries damages exceeding $75,000 if the Plaintiff proves that the injuries were caused by the willful misconduct of AA and its agents acting within the scope of their employment.

---

[2] Source: https://www.aa.com/i18n/footer/conditions-of-carriage.jsp?locale=en_HK

38. The injuries suffered by Plaintiff were caused by the willful misconduct of AA and its agents including the pilot in command of the subject flight or maintenance personnel who were working in the course and scope of their employment at the time of the incident.

39. Further, AA and their agents did not take all necessary and possible measures to avoid the injuries suffered by Plaintiff, precluding any anticipated reliance of Article 20 of the Warsaw Convention.

40. Ms. Hanson incurred serious bodily injuries, including aggravation of a previous ankle injury, orthopedic neck and back injuries, physical pain and suffering, anguish, fright and shock, annoyance, discomfort, loss of the enjoyment of life in the past and in the future.

WHEREFORE, Plaintiff, Stephanie Hanson, demands judgment against Defendant, American Airlines, Inc., for compensatory damages and any and all damages to which she is entitled under applicable law.

## COUNT IV
## AGAINST ENVOY AIR INC.
## UNDER ARTICLE 17 WARSAW CONVENTION

41. In the alternative, at the time of the incident described above there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the Warsaw Convention. Both the United States and The Bahamas are state parties to the Warsaw Convention.

42. At the time of the incident and subsequent injuries, Ms. Hanson was engaged in international carriage as defined in Article 1(2) of the Warsaw Convention and the same is applicable to this action pursuant to Article 1(1) of the Warsaw Convention.

43. Pursuant to Article 17 of the Warsaw Convention, the carrier is strictly liable for damage sustained in case of death or wounding of a passenger upon condition only that the accident which

8

caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking. In the instant case, Ms. Hanson was aboard the aircraft.

44. The Warsaw Convention and Envoy ticket contract further provides that for a passenger's damages up to $75,000.00 the carrier cannot exclude or limit its liability. Warsaw Conv., Art. 22(1). (*See* Exhibit 4: AA Contract of Carriage)[3]

45. In addition, pursuant to Article 25 of the Warsaw Convention, the Defendants are liable to Plaintiff for all personal injuries damages exceeding 16,600 SDR if the Plaintiff proves that the injuries were caused by the willful misconduct of Envoy and its agents acting within the scope of their employment.

46. The injuries suffered by Plaintiff were caused by the willful misconduct of Envoy and its agents including the pilot in command of the subject flight or maintenance personnel who were working in the course and scope of their employment at the time of the incident.

47. Further, Envoy and their agents did not take all necessary and possible measures to avoid the injuries suffered by Plaintiff, precluding any anticipated reliance of Article 20 of the Warsaw Convention.

48. Ms. Hanson incurred serious bodily injuries, including aggravation of a previous ankle injury, orthopedic neck and back injuries, physical pain and suffering, anguish, fright and shock, annoyance, discomfort, loss of the enjoyment of life in the past and in the future.

WHEREFORE, Plaintiff, Stephanie Hanson, demands judgment against Defendant, Envoy Air Inc., for compensatory damages and any and all damages to which she is entitled under applicable law.

---

[3] Source: https://www.aa.com/i18n/footer/conditions-of-carriage.jsp?locale=en_HK

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

Dated: August 11, 2021

>Respectfully submitted,
>
>THE LAW OFFICES OF ROBERT L. PARKS, P.L.
>Counsel for Plaintiff
>799 Brickell Plaza, Suite 900
>Miami, Florida 33131
>Tel: (305) 445-4430; Fax: (305) 445-4431
>
>By:/s/ Robert L. Parks_____
>   ROBERT L. PARKS
>   Florida Bar No. 61436
>   bob@rlplegal.com
>   ana@rlplegal.com
>   gary@rlplegal.com
>   GABRIEL GARAY
>   Florida Bar No. 103303
>   gabe@rlplegal.com